May it please the court, J.K. Theodosia Johnson on behalf of Ms. Hayman. The Marston Learning Principle governs sentencing that has to be sufficient but not greater than necessary, and the maximum sentence is reserved for the worst offenders, the ones who are most culpable. Ms. Hayman, who has an IQ of 63, believed a parody website was real and cannot live alone as a plenary guard is not the worst of the worst. The district court failed utterly to consider how intellectual disability affected all the sentencing factors, and it does affect them all. It affects retribution because intellectual disability is inherently mitigating and it reduces culpability. It affects deterrence because, again, the intellectual disability affects cognition and your ability to reason things out. And it affects deterrence in that general population is not going to have the same reaction to a punishment for an intellectually disabled individual as it does for themselves. They do see themselves as categorically different. Now, we've repeatedly said we don't reweigh the factors. So you'd have to show that the court wouldn't you have to show that the district court simply didn't consider this? Yes, and I think that when you send it to the statutory maximum without ever discussing it, we did show that the judge never considered Ms. Hayman's intellectual disability. We're not asking this court to say to reweigh it. We're asking them to look at it in light of the fact that she never mentioned it and that it is inherently mitigating. The Supreme Court has told us that. And with that information, she at the very least should have said, you know, I find that even though she has intellectual disability, her culpability is less for this crime. But also, she relied almost solely on dangerousness, which derived from stereotypes of those with intellectual disability instead of any sort of actual testing to show dangerousness. And that any of these prior acts, you know, didn't result in convictions, but they didn't even result in arrests. I mean, the one time that she managed to do anything when she went to Mexico, as soon as she was confronted with any sort of deterrence, that's not quite the right word, but she immediately turned around and left. But she needed help to leave because she had already like left her ID somewhere. This is not someone who is dangerous. And, you know, the government kept pointing to she kept contacting this parody website, but you're using the very intellectual problem, intellectual disability that Atkins has told us is mitigating as evidence of dangerousness. I'm looking at the sentencing transcript, and, you know, really, there was a fulsome discussion of the defendant's history. And the defendant participated in much of the colloquy. So, I mean, we're not looking at this in a void. It really looks like, you know, a solid back and forth between the defendant, the defendant's lawyer and the court. And a lot of these cases, we don't really see that. There are much more perfunctory. Where do you think Judge Strickland went off the rails here? Because the developmental disability was front and center's part of the presentation, you know, so it's not like she didn't, you know, she ignored it. It was part of the context of the entire sentencing hearing. Well, I think one of the things that Atkins talks about is that those with intellectual disability have difficulty with expressive and respective language, and that very often that sort of translates into lack of remorse, which I think Strickland took from this. And a just general reliance on, instead of what we actually know about intellectual disability, of stereotypes of what we think it should look like or has looked like in the past. And like, again, the Supreme Court has said that you need to look at what it actually does and what it actually is and the scientific basis of intellectual disability and how it affects our actions. I mean, remember that she had a plenary guardian. When she tried to actually go and meet with the alleged hitman, she couldn't escape her caretaker, and her caretaker prevented her from going there and told the alleged hitman that they had already called the police. Like, this is not your worst of the worst of the person that used the interstate commerce for murder for hire is designed to get at. I mean, they passed it to reach mafia hitmans. She's as far from a mafia hitman as it's possible to get. I mean, she's just. If the statutory maximum is reserved for the most culpable, she needed to explain why this person who believed a parody website that is over the top and is designed to be so was actually real and who has a plenary guardian, has never lived on their own, will never live on their own, deserves the same sort of punishment as one who is fully cognitively aware and went out and contracted for someone to kill an individual. I mean, it's really it boils down to, like, yes, it was in the I'm sorry, Judge McHugh, are you asking a question? Your mic's off, Judge McHugh. Judge McHugh, you look like you're speaking, but your mic is off. I can't hear you, I said the host had to unmute me, I think you muted me, Harris. Thank you. We did that on purpose. OK, my question is where the court did go through the thirty five fifty three A factors. How much discretion do we have? I mean, even if we we might have sentenced differently, how much discretion do we have here to reweigh those factors and say that the intellectual disability here should have been weighed more heavily? I think you so one of the problems, obviously, right, is that it gets murky between procedural and substantive reasonableness. And when you're left in the zone of speculation about what weight or consideration a factor was given, which is exactly where we are right now, you have to reverse for further. Discussion for resentencing and in cases like Crosby and Cookson, where they're kind of glossed over, like I find that it's necessary for deterrence, but don't discuss how it deters either that specific individual or more general individuals, that's this court has said that's not sufficient. And I think that's where we are here. I mean, everything about the sentencing had to be looked through the lens of intellectual disability and it needed to be at least acknowledged. And she never said the words intellectual disability in talking about it. And when she's the first factor, right, it goes to retribution. And we know that they're less culpable. It's inherently mitigating. The Supreme Court has told us that over and over. And in that background, you have to at least say, you know, even with all this inherently mitigating stuff, I think she's still culpable as the worst of the worst because X, Y, and Z. But X, Y, and Z don't really exist here. So it's not that we're asking you to reweigh it. You have to look at the entire thing through the lens of intellectual disability. And there's no evidence that she did that. So is this a procedural error? Did you did you raise did you did you did defense counsel in district court say you have not given an adequate explanation? No, and he did say when she asked, no, but he did continue to immediately argue about the sentence. I also think that given Ms. Heyman's status, I think it's unfair to impart that knowing and intentional waiver to her. But also, it's right on that line, right? We're not talking about knowing and intentional waiver, we're talking about forfeiture, which is not necessarily intentional. The question is whether we review for plain error in this regard. You would have to revert for plain error, but it's really on that line because we know that procedural reasonableness bleeds into substantive reasonableness. It gets a little murky because I'm like, it's the adequacy of the explanation. And can we engage in a good review and an appellate review? And I think that's lacking here. And the First Circuit found itself in the exact same position and said, this isn't really a procedural problem. It's so invasive and it's the mitigating factor that it is substantive. It's not procedural. In what case are you referring to there? It's Colón-Codero. I don't have the citation right off the top of my head, but I did cite it in the reply brief and I can't. I've handed it to you.  I mean, if you look, so Dr. Abbeel, who was the BOP doctor, never opined on dangerousness or even the offense. But Dr. Kaufman, who had extensive experience with Ms. Hayman, pointed out how ridiculous this is, right? Because on the face of it, it sounds serious, right? She tried to contact a hitman multiple times. She met with them, all that. But when you look at what it actually is, it's, as Dr. Kaufman said, ridiculous. I'm going to reserve the remainder of my time because I'm essentially just repeating myself. I think you're right in that. I think we understand what your argument is. Thank you, counsel. Ms. Messick? Good morning, your honors, and may it please the court. Paige Messick for the United States. Hayman's 10-year sentence for attempting to have a woman violently murdered was reasonable in every way. And I'll jump back in where you all just left off with substantive reasonableness. The district court imposed a sentence of reasonable length under the 3553a factors. Having a mild intellectual disability does not compel a district court to conclude that a defendant deserves a downward variance from the guideline range, not when the crime is so serious and the defendant has a history of putting other dangerous plans into action. Let me ask you a specific question. When looking at the transcript from the sentencing hearing, does the court specifically discuss the impact of the intellectual disability on the evaluation of the 3553a factors? No, Judge McHugh. The district court did not specifically address intellectual disability on the record. Do you think that it needed to under some of the Supreme Court authority about how important that is in assessing culpability? No, I don't think that the district court was required to address that on the record, either under those Supreme Court cases or under this court's precedent about what a district court has to specifically say in imposing a guideline sentence. Because it's obvious from the sentencing record what Judge Strickland was concerned with. Judge Strickland was very well aware of Hayman's intellectual capacity. Judge Strickland had presided over a full day hearing on competency earlier in the case, started the hearing by saying, I've considered your arguments, ended the hearing by saying, I've considered your argument for no more time, and the intellectual disability was the core piece of that argument. As Judge Timkovich said, this issue was front and center. And so when the district court says, I'm really concerned that you're a danger to the community, I'm concerned with some of the stuff in your history, and this crime is an extremely serious one, and then gives a sentence at the statutory maximum, you can tell that Judge Strickland has determined that Hayman's intellectual disability does not outweigh or does not neutralize those other factors. So it may be inherently mitigating. At least part of it is. At least part of the intellectual disability has some inherent mitigating effect on culpability, for instance. But it can also have an effect that offsets that in the way that the intellectual disability may affect Hayman's ability to exercise good judgment. And so the district court certainly is within its discretion to conclude that this disability does not outweigh these other important factors. And I don't think that it has to stay so on the record either. Well, how would you distinguish Cologne court Darrow then? Cologne is a very different case. First, because there was a lot more explanation in this case, right, than was on the record in Cologne. And also, Cologne is an upward variance. And that makes a huge difference because there are two different frameworks for what a district court has to say in explaining a sentence that depend on whether the sentence is a guideline sentence, as we have here, or is an upward variance, as was the case in Cologne. If the district court imposes an upward variance, the district court has to address on the record every non-frivolous argument that the defendant makes for mitigation, every material non-frivolous argument. And so if this were an upward variance, we might have an insufficient explanation, but it's not. It's a guideline sentence. And it's a guideline sentence where the guideline was already lowered substantially to the statutory maximum. But the entire framework that the First Circuit applied in Cologne is not the right framework to apply here. This court should apply Nunez-Coronza and all of the cases that talk about the amount of explanation that's necessary for a guideline sentence. I would also like to touch on the forfeiture and waiver point. Here, we don't just have a forfeiture of this issue. We have an affirmative waiver because in response to a direct question from the district court about the adequacy of its explanation, responded, Your Honor, I do not object to the adequacy of your explanations. And when you say that, you shouldn't be able to object on appeal to the adequacy of the explanations. This is not the sort of question that we sometimes see, a general question at the hearing, and we say, well, I'm not going to object to your explanations. See, none were adjourned. Right? This wasn't that. This was direct and it was targeted. And if this kind of... In this case, immediately after saying that, defense counsel pivots to the main argument. And don't we have some authority, Zubia Torres, that suggests when counsel does that, it's not necessarily that they're really intending the way, they're just trying to pivot. I'm not familiar with that case, Your Honor. I would say here that what defense counsel did was say, I don't have an objection to the adequacy of your explanations. That's what you just asked, you, Judge Strickland. Right? Let me move on and talk about the length of the sentence you just imposed. Right? So I think this is an intentional... It is a pivot. It's a pivot to the place where the waiver by asking a specific question like this, then I would ask the court, please tell us what words would accomplish that kind of waiver. Because it seems to me she is doing absolutely everything she can to elicit an objection at the time that she can still address it. And it doesn't seem efficient or fair to allow someone to answer this kind of very specific question about a narrow issue with no, I have no objection to that, and then turn around and raise the exact objection that they've just disclaimed when they're on appeal. So if this isn't enough for a waiver, I would just ask that the court try to provide us some more guidance, because we want to do what we can to get sufficient explanations out. Judge Strickland wants to do that. You can tell through her careful questioning. And so I think I've made my point there. We also had a question about the calculation of the guideline range. In this case, I'm happy to rest on the briefs as far as that, unless the court has any questions. Moving back to the adequacy of the explanation, I think under Nunez-Coranza, we clearly have an adequate explanation. In fact, we have more than what was required in that case. The district court here clearly entertained defendant's argument for a downward variance. She opened the sentencing hearing by saying, I've read your briefing. I've looked at the PSR. She then engages actively in the questioning during the sentencing hearing. She's expressly considered the 3553a factors. She says, she goes through them all on the record, not just says, I've considered these factors, but actually goes through and pauses to elaborate on the factors that are the most important here to her decision. This is more than enough under Nunez-Coranza. I think what the argument is, if I'm understanding it, is that yes, she went through the factors, but she was supposed to look at those factors through the lens of the substantial intellectual disability of this particular defendant. And there's nothing in the transcript that reflects that that was done. How would you respond to that argument? I think when Judge Strickland says the things that really concern me are the seriousness of the offense and the danger that you present to the public and the other people that you have tried to harm in the past, Judge Strickland is necessarily saying, I don't think your intellectual disability keeps you from committing serious offenses and being a danger to the public. Well, I mean, you're inferring that. And I guess the question is, did we need something on the record to tell us that she considered that? I guess that is an inference, but I think it's a very strong one from the record. And no, she doesn't need to do anything specifically to put that on the record. The court's precedent is clear that in imposing a guideline sentence, the district court does not need to affirmatively reject on the record each argument that the defendant makes for a downward variance. So there is no procedural requirement that Judge Strickland did that here. And I recognize that the explanation blends with the substantive reasonableness of the sentence because it assists this court's review. I'm not aware of any case that has found that an explanation that is procedurally sufficient is nonetheless insufficient to enable meaningful appellate review. Here, there's no question why Judge Strickland is imposing this sentence. She's very familiar with Hayman. She's familiar with Hayman's intellectual capacities. She's read the briefing. She's considered the arguments. She's simply not persuaded. And I think that that's quite clear. And she even highlights the reasons that she thinks that 120 months is the absolute minimum that will meet these factors. I don't think anybody has been left in the dark here. If the court does not have any further questions, I'm happy to return the remainder of my time. Any further questions from the panel? Thank you, Ms. Messick. We'll get Ms. Johnson back on. I think she had a couple minutes left. All right. Yes. So, going back to the dangerousness, Judge Strickland cherry-picked facts of this one trip to Mexico where, again, when she was actually met with real-world resistance, she immediately did nothing. All the others were merely plans or exclamations of, you know, directed at your mother-in-law may not be the most unique statement ever made. And then, again, like, she says, you know, I'm given her behavior in this case and given her behavior in the past. But her behavior in this case is ludicrous. I mean, she couldn't escape her caregiver. She could never have gotten to Bayard, which is where the supposed victim lived, by herself. She never had a driver's license. She contacted a parody website over and over. You can't use the same evidence of intellectual disability, which is what that repeated contact shows as evidence of dangerousness. You know, Atkins warns explicitly against that. You know, on the waiver issue, the defendant's lawyer, Ms. Poussaint, you know, specifically said, quote, your honor, I do not object to the adequacy of your explanations, close quote. Why, you know, why isn't that pretty much a clear and unmistakable waiver of the challenge that you're making on appeal? Even if it is a waiver, we can still consider it as a substantive error in the sentencing. And if we find ourselves in the zone of speculation, where I think we clearly are, it's substantively unreasonable. I do think I should have read the record a little more carefully there. But the immediate pivot to, you know, but 120 months is unreasonable. And I mean, I can hardly be pointing fingers at being inarticulate, but he doesn't say, you know, it's not the sentence. I can't remember exact words, but it was fumbled, which is like I'm fumbling now. And I want to point out too, like with the cross-reference, any sentence is going to be above the guideline range. It's, I can't remember exactly, but it's, but with that cross-reference, which they've applied in all cases, it's always going to be above the 120 statutory max. And, you know, just going to return. And then that cross-reference, you were definitely on plain error, right? We were definitely on plain error in the cross-reference. And we don't have, I mean, there's no law, right? Nothing that would make it plain. No, not no. But I'll just return to the statutory max is supposed to be for the worst offenders who are most culpable. And Ms. Hayman is not that. I would ask you to reverse and remand because the sentence is substantially unreasonable. It is manifestly unreasonable. Thank you. Thank you. Thank you, counsel. Counselor, excused. Case is submitted.